UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brad Stevens,

                    Plaintiff,                          Court File No. 16-cv-3807 (JRT/LIB)

        v.

                                                        **REPORT AND RECOMMENDATION**

Thomas Roy, et al.,

                    Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss. [Docket No. 16]. The Court took Defendants' motion under advisement on the written submissions.

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**.

## I.    BACKGROUND  AND STATEMENT OF FACTS[1]

Plaintiff Brad Stevens ("Plaintiff") is currently civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Compl., [Docket No. 1], at ¶ 1). Generally, Plaintiff brings the present action pursuant to 42 U.S.C. § 1983 alleging that Defendants[2] violated his constitutional, statutory, and common law rights while he was previously in the custody of the Commissioner of Corrections, Department of Corrections. (Id. at ¶ 1, 3). The factual allegations in Plaintiff's

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Complaint as true and construes them in the light most favorable to Plaintiff. See, Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

[2] Plaintiff names as Defendants Thomas Roy, Paula Thielan, Jeffery Pederson, Bruce Reiser, Greg Smith, Victoria Otte-Phillips, Nancy Stacken, Peter Puffer, Steven Allen, Lori Korts, Cal Ludeman, Lucinda Jesson, Dennis Benson, Nancy Johnston, and Thomas Lundquist, as well as, Jane and John Doe.  Plaintiff brings suit against each Defendant in his or her individual and official capacity.

Complaint take place while he was under the control of the Department of Corrections, on intensive supervised release, and/or dually committed to both the Department of Corrections and the MSOP. (Id.).

On March 14, 2003, Plaintiff entered an Alford plea agreement in Minnesota's First Judicial District, Goodhue County District Court. (Id. at ¶ 19). In that plea agreement, Plaintiff maintained his innocence, and the state agreed to a thirty-six month sentence for the attempted fourth degree criminal sexual conduct charge at issue. (Id.). The Court accepted the Alford plea agreement, and it imposed a thirty-six month sentence, as well as, a ten year term of conditional release. (Id.).

On November 15, 2004, the Goodhue County Attorney requested a judicial hold on Plaintiff's intensive supervised release, and the Court granted the request pending a commitment petition. (Id. at ¶ 22).

On November 21, 2004, Plaintiff's sentence for attempted fourth degree sexual conduct expired, and Plaintiff was placed on conditional release for a term of ten years. (Id. at ¶ 51).

On November 22, 2004, Plaintiff was released from the Department of Corrections and transferred to the Minnesota Sex Offender Program at St. Peter, Minnesota for intensive supervised release. (Id. at ¶ 24). The terms of Plaintiff's intensive supervised release included conditions that he "[m]ust successfully complete sex offender programming as directed by the clinical director of the" MSOP; he must abide by all rules and regulations of the facility whose authority and control he was under; and if he was "released from the custody of the hold for civil commitment, or from civil commitment to the" MSOP prior to expiration of his sentence, a designee would notify the "Hearing and Release Unit prior to release." (Id. at ¶ 28). When

Plaintiff was admitted to the MSOP, he was notified of "his rights under Minn. Stat. § 235B.03 subd. 10." (Id. at ¶ 29).

On March 2, 2005, a contested civil commitment trial was held. (Id. at ¶ 32). At that trial, Plaintiff continued to maintain his innocence related to the March 14, 2003, Alford plea agreement. (Id. at ¶ 33). Court examiner, Dr. Rosemary Linderman, and Linda Marshal testified at the hearing that Plaintiff met the criteria of a sexual dangerous person, and they recommended treatment at the MSOP. (Id. at ¶ 34). On April 25, 2005 the Goodhue County District Court issued an Order finding that Plaintiff had met the criteria of a sexually dangerous person, and it initially committed Plaintiff to the MSOP pending a sixty day review hearing. (Id. at ¶¶ 36–37).

Plaintiff alleges that at the time he was initially committed to the MSOP, Defendants Ludeman and Johnston failed to both provide a program plan assessment to determine at what phase of the program Plaintiff should have entered and to further determine whether Plaintiff should be committed to the Moose Lake or St. Peter facility. (Id. at ¶ 39).

On July 6, 2005, the court held a sixty day review hearing. (Id. at ¶ 40). At that hearing, Plaintiff alleges that Dr. Bruce Stewart testified that during treatment Plaintiff would not be expected to admit offenses which the commitment court did not find had been proven by clear and convincing evidence, and he further testified that "they have ways to discuss offenses without a patient incriminating himself." (Id. at ¶ 40–41). However, Plaintiff alleges that on July 21, 2005, Defendant Johnston informed Plaintiff "that he would have to admit to offenses in the record that included charged and uncharged offenses in order to participate in treatment." (Id. at ¶ 42). Based on this representation, Plaintiff decided "not to consent to treatment, as he would not talk about the offenses due to the fear of perjury charges being filed." (Id. at ¶ 43).

On August 25, 2005, the Goodhue County District Court issued an order civilly committing Plaintiff to the MSOP noting that the MSOP had "ways to discuss offenses without a patient incriminating himself," and that Plaintiff "would not have to admit . . . to any offenses" as part of treatment which the "court did not find proven by clear and convincing evidence." (Id. at ¶ 44).

On August 26, 2005, Plaintiff was informed of the order, and he was "invited" to participate in "sex offender programming without modification." (Id. at ¶ 46). Plaintiff refused treatment "due to the fears he could be subjected to a charge of perjury and the plans for future involvement [were] unclear without modification to meet his self-incriminating needs." (Id. at ¶ 48). It appears Plaintiff remained at the MSOP after this refusal of treatment, and he continued to refuse to participate in treatment.

On February 2, 2006, Defendant Johnston again informed Plaintiff that to progress in treatment Plaintiff "was required to admit and discuss his sexual offense history" and that Plaintiff must do so "prior to consenting for sex offender specific treatment." (Id. at ¶ 60). Plaintiff again refused to consent to treatment due to his fears of perjuring himself in relation to his "March 2005 sworn testimony denying he engaged in harmful sexual conduct." (Id. at ¶ 61–63). Plaintiff alleges that due to this prior testimony he "was required by law to refuse sex offender specific training" until March 2008, when he would no longer be at risk for being charged with perjury. (Id. at ¶ 65).

In June 2006, Plaintiff filed a state Petition for Habeas Corpus challenging his civil commitment, and during that proceeding he alleges that he was informed he was "under an

4

indefinite commitment at MSOP" and that he "like all patient, has the right to refuse treatment." (Id. at ¶ 66).[3]

Plaintiff alleges that in October 2006, the Department of Corrections Hearing and Release Unit was informed that Plaintiff was "in violation of terms of probation" specifically that he must successfully complete sex offender treatment and that he must abide by all rules and regulations. (Id. at ¶ 67). On November 3, 2006, Defendant Thielan conducted a disciplinary hearing in which Defendant Thielan heard testimony from "MSOP Behavioral Analyst Ryan Chukuske," who testified that Plaintiff had refused to participate in treatment on five different occasions. (Id. at ¶ 68). At the disciplinary hearing, Plaintiff argued that under his circumstances a "sanction imposed for failing or refusing sex offender treatment violated [the] Fifth Amendment privilege against self-incrimination." (Id. at ¶ 71). Defendant Thielan found Plaintiff's argument unpersuasive, and she found him in violation of the terms of his intensive supervised release because he had refused to participate in treatment at the MSOP after being there for almost two years. (Id. at ¶ 69, 74). Plaintiff was revoked to the custody of the Department of Corrections for the remainder of his conditional release term. (Id. at ¶ 74–75). Defendant Thielan directed Plaintiff to "participate in sex offender treatment," and she indicated that he could be "released from disciplinary confinement if he [made] progress in treatment and the MSOP Clinical Director [found] that . . . [it] would be more beneficial/ productive for him to return." (Id. at ¶ 74–75, 79).[4]

---

[3] Plaintiff included a citation to "*Stevens v. Ludeman*, 2008 Minn. App. Unpub. LEXIS 764." (Id. at ¶ 66).
[4] After his revocation back to the Department of Corrections, Plaintiff made several requests to return to the MSOP to participate in sex offender treatment, but he maintained his argument that his revocation violated his Fifth Amendment rights. (See, Id. at ¶¶ 85, 86).

In April 2007, Defendant Korts "reviewed [P]laintiff's directives to participate in sex offender treatment" and informed him he was on a "waiting list to be admitted to the MSOP at the DOC site in Moose Lake Minnesota." (Id. at ¶ 84).

On April 8, 2008, Plaintiff requested to receive his admission mental health screening assessment which found that "no clinical significant psychological disorders requiring mental health treatment while at Rush City." (Id. at ¶ 87).

Also in April 2008, Plaintiff appeared before Defendant Korts for an annual review hearing where Defendant Korts allegedly informed Plaintiff that the "HRU" would not actually be conducting an annual review as Plaintiff was on the "waiting list to be admitted to the MSOP at the DOC site in Moose Lake Minnesota." (Id. at ¶ 88). Plaintiff asked where he was on the list as he was at that time no longer subject to fears of perjury, and Defendant Korts informed Plaintiff that because "he was already civilly committed he was low priority for being admitted into [the] MSOP-DOC site for sex offender programming." (Id. at ¶ 89).

Plaintiff alleges that on April 27, 2010, Defendant Korts told Plaintiff "to write the MSOP and request sex offender treatment because of the waiting list." (Id. at ¶ 90).

On May 4, 2010, Plaintiff wrote Defendant Benson "formally requesting a return to the MSOP." (Id. at ¶ 92). Defendant Benson did not respond, and Plaintiff alleges that Defendant Korts told him that Defendant Benson would not respond, so Plaintiff should write to Defendant Lundquist. On January 10, 2011, Defendant Lundquist responded to Plaintiff's request by writing that he was "unaware of any clinical or other unique factors in [Plaintiff's] case necessitating a transfer to a DHS [f]acility." (Id. at ¶ 96).

On January 22, 2011, "Defendant Allen responded on behalf of" Defendant Roy in response to Plaintiff's concerns related to his eligibility for sex offender treatment, and

Defendant Allen informed Plaintiff that "because he was a dually committed offender in custody of the Commissioner of Correction, he [would] be provided sex offender treatment upon return to the MSOP." (Id. at ¶¶ 108–09). Defendant Allen also informed Plaintiff that the MSOP would determine when he would be eligible to return to the MSOP, however, Plaintiff could contact Defendant Stacken during his prison confinement and mental health care could be provided to Plaintiff to manage any mental illness. (Id. at ¶ 110).

In April 2011, Plaintiff again met with Defendant Korts, and Plaintiff maintained that his continued discipline (i.e., custody in the Department of Corrections) violated his Fifth Amendment rights.

In May 2011, Defendant Stacken met with Plaintiff to discuss Plaintiff's request for mental health care, and on June 3, 2011, Defendant Stacken told Plaintiff "she would discuss his request with Defendant Smith, Reiser and Puffer and get back with him with her findings." (Id. at ¶ 100–01).

Plaintiff alleges that in 2011 the Department of Correction issued DOC policy # 203.014 subd.3(b) which stated that "release returnees who are already civilly committed as either SDP or SPP are not reviewed for or referred to the MSOP-DOC site." (Id. at ¶ 105). In November 2011, Defendant Korts informed Plaintiff of the new DOC policy, and he informed Plaintiff that due to the new policy Plaintiff was "not eligible for sex offender treatment at the MSOP-DOC site." (Id. at ¶ 106).

In April 2012, Plaintiff applied to the Special Review Board for discharge from his civil commitment pursuant to Minnesota Statute 235B.185, subd. 9. (Id. at ¶¶ 114, 115, 125).

On May 15, 2012, Defendant Pederson responded to Plaintiff request to review his civil commitment placement informing Plaintiff that his placement was pursuant to Court order, and

he further informed Plaintiff that the Department of Corrections would provide no further responses to any correspondence regarding Plaintiff's civil commitment placement. (<u>Id.</u> at ¶ 117–18). On May 22, 2012, Defendant Stacken informed Plaintiff that, because Plaintiff was already civilly committed, the Department of Corrections would not provide sex offender programming, and because Plaintiff was found to not need mental health treatment by Defendant Allen, there were no mental health services available to Defendant. (<u>Id.</u> at ¶ 119).

On May 31, 2012, Plaintiff was diagnosed with "serious mental disorders," and it was recommended that Plaintiff "actively engage in sex offence specific treatment to work towards managing his dynamic risk factors." (<u>Id.</u> at ¶¶ 120–21).

On August 2, 2012, the Special Review Board held an administrative hearing on Plaintiff's application to fully discharge his civil commitment pursuant Minnesota Statute 253B.18, subdivision 15. (<u>Id.</u> at ¶¶ 122–24). At that hearing, where Plaintiff was represented by counsel, Dr. Jones stated that Plaintiff was not participating in treatment although it was recommended in his diagnosis, and Plaintiff's counsel informed the Special Review Board that Plaintiff was "not eligible for treatment while at the DOC because he is civilly committed." (<u>Id.</u> at ¶¶ 122–24).

On August 19, 2012, the Special Review Board denied Plaintiff's request to fully discharged his civil commitment "in accordance with the factor[s] under Minn. Stat. 253B.18 subd 15 because (a) he [was] not capable of making an acceptable adjustment to open society without supervision, (b) he continue[d] to be dangerous to the public and (c) he continue[d] to need inpatient treatment and supervision." (<u>Id.</u> at ¶ 125).

On November 28, 2012, Defendant Otte-Phillips informed Plaintiff that "his conditional release term and expiration of sentence had been extended one day under the *Cote v. Roy*

decision," and he could "be returned to the MSOP sooner if [he] complete[d] treatment or if the clinical director at MSOP [felt] it would be beneficial for" Plaintiff to return. (Id. at ¶ 126).

On November 21, 2014, Plaintiff's criminal sentence expired, and he was transferred from the Department of Corrections back to the MSOP in Moose Lake Minnesota. (Id. at ¶ 128). Since Plaintiff's readmission to the MSOP, Defendant Puffer and Defendant Stacken[5] have diagnosed Plaintiff with "severe mental disorders requiring treatment at the secure DHS hospital." (Id. at ¶ 129).

Based on the foregoing events, Plaintiff filed a Complaint with this Court on November 2, 2016. (Compl. [Docket No. 1]). Plaintiff names as Defendants: Thomas Roy, Paula Thielan, Jeffery Pederson, Bruce Reiser, Greg Smith, Victoria Otte-Phillips, Nancy Stacken, Peter Puffer, Steven Allen, Lori Korts, Cal Ludeman, Lucinda Jesson, Dennis Benson, Nancy Johnston, and Thomas Lundquist, as well as, Jane and John Doe (collectively "Defendants"). (Id.). Plaintiff brings claims against the named Defendants in both their individual and official capacities. (Id.).

In Count I and Count II, Plaintiff alleges that the Defendants' acts and omission, as well as, the policies and procedures created and implemented by Defendants[6] violated his rights under the Due Process Clause of the Fourteenth Amendment, the Minnesota Constitution, and the Minnesota Civil Commitment and Treatment Act ("MCTA") by denying Plaintiff the right to refuse care while civilly committed and the right to obtain treatment voluntarily under the MCTA. (Id. at ¶¶ 4a, 136–63). In Count III, Plaintiff alleges that his assertion of his Fifth Amendment right when asked by MSOP as a condition for treatment to admit offenses resulted in the revocation of his intensive supervised release, and he alleges that the revocation based on

---

[5] Plaintiff alleges that Defendant Puffer and Defendant Stacken worked for the Department of Corrections initially, and then later became the "Clinical or Associate Directors of [the] MSOP treatment team." (Id. at ¶ 129).
[6] The Counts of Plaintiff's Complaint, [Docket No. 1], often refer to the Defendants collectively without distinguishing any specific Defendant or Defendants to which Plaintiff is referring. (See, Id.).

that assertion violated his federal rights under the Fifth Amendment to the United States Constitution, as well as, his rights under the Minnesota Constitution. (Id. at ¶¶ 4b, 164–80). In Count IV, Plaintiff alleges that Defendants' failure to provide Plaintiff with mental health treatment while in the custody of the Department of Corrections constituted deliberate indifference to his serious psychological need, as well as, cruel and unusual punishment which violated Plaintiff's rights under the Eighth Amendment, the Minnesota Constitution, and the MCTA. (Id. at ¶¶ 4c, 181–95). In Count V, Plaintiff alleges that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment, the Minnesota Constitution, and the Minnesota Civil Commitment and Treatment Act ("MCTA") by "arbitrarily" denying his request to be transferred back to the MSOP for sex offender treatment when a Department of Corrections policy allowed Plaintiff to be transferred and thereby denied Plaintiff treatment. (Id. at ¶¶ 4c, 196–203). In Count VI, Plaintiff alleges that after his dual commitment Defendants' enactment of policies rendering "violators already civilly committed ineligible for sex offense treatment at the MSOP DOC site" violated his due process rights under the United States Constitution and the Minnesota Constitution by affecting his right to be release from Department of Corrections disciplinary confinement prior to the expiration of his sentence without due process of law, and thereby, denied him sex offender treatment at the MSOP. (Id. at ¶¶ 4d, 204–20). In Count VII, Plaintiff alleges that Defendants conspired to deprive Plaintiff of his right to equal protection under the law in violation of the Equal Protection Clause of the United States Constitution and the Minnesota Constitution. (Id. at ¶¶ 4e, 221–29). In Count VIII, Plaintiff alleges that he was unlawfully imprisoned for an intensive supervised release violation from November 3, 2006, until November 21, 2014, when Defendants "failed to notify the sentencing court and the prosecutor in the jurisdiction where plaintiff was sentence that he did not violate

10

section 609.345 mandated by the conditional release statute" which violated his rights under the Due Process Clause of the Fourteenth Amendment, as well as, his rights under the Minnesota Constitution. (Id. at ¶¶ 4f, 230–45). At Count VIII, Plaintiff appears to be arguing that imposition of his original ten year term of conditional release was unlawful; that Defendants violated his rights when they failed to notify the sentencing court Plaintiff should not have been subject to such a term of conditional release; and when Defendants revoked his intensive supervised release by returning Plaintiff to disciplinary confinement with the Department of Corrections. (See, Id. at ¶¶ 4f, 230–45).

Plaintiff seeks declaratory judgment, as well as, actual and/or nominal money damages. (Id. at 60).

After the Court granted Plaintiff's Application for Leave to Proceed in Forma Pauperis, Defendants filed the present Motion to Dismiss. (See, Order [Docket No. 6]; Motion [Docket No. 16]). In their Memorandum in Support, Defendants argue that this Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and/or, for a failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Defs.' Mem. [Docket No. 18]).

Subsequently, the Court issued an Order directing Plaintiff to respond to Defendants' Motion to Dismiss by no later than March 20, 2017. (Order [Docket No. 22]). On March 14, 2017, Plaintiff filed a "Notice of Hearing on Motion to Leave To File First Amended Complaint and Scheduling Order" indicating that he would be bringing a motion to amend his Complaint; however, no such motion was ever filed nor was any amended complaint ever filed. (Notice [Docket No. 25]).[7] Plaintiff has also not responded to the present motion to dismiss in any

---

[7] To the extent Plaintiff wished to amend his Complaint, he has failed to file any actual motion to amend or to submit a copy of any proposed amended complaint as required by Local Rule 15.1. See, Meehan v. United

manner, and other than his Notice of Motion to Amend, Plaintiff has not filed any document in the present case since Defendants filed the present Motion to Dismiss.

## II.    DEFENDANTS' MOTIONS TO DISMISS. [DOCKET NO. 16].

### A.  Standard of Review

#### 1.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). "A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may challenge at any time the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See, Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge, courts may consider matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's factual allegations. Osborn, 918 F.2d at 729–30, n.6.

#### 2.  Failure to State a Claim

When evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."

---

Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002) ("A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted a proposed amended pleading.") (internal quotation marks omitted); O'Neil v. Simplicity, Inc., 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules."); Clayton v. White Hall Sch. Dist., 778 F.2d 457, 460 (8th Cir. 1985) (finding the district court did not abuse its discretion in failing to grant leave to amend where the plaintiff "merely concluded her response to the [defendant]'s motion to dismiss with a request for leave to amend" and did not submit a proposed amendment along with her motion). Moreover, Plaintiff here has provided no explanation as to how amending the Complaint would save any of the claims from dismissal. See, Brandt v. Davis, 191 F.3d 887, 893 (8th Cir. 1999) (finding no abuse of discretion where the party failed "to explain how he would amend the complaint to save the claim"). Therefore, Plaintiff's request to amend, if any such request could even liberally be considered to have been made, is denied.

Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting

Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178

(1999). Courts must accept as true all of the factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th

Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be

sufficient to "raise a right to relief above the speculative level," which "requires more than labels

and conclusions, and a formulistic recitation of the elements of a cause of action will not do."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged," and

"[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). When courts undertake

the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims

against a defendant "across the line from conceivable to plausible," they may disregard legal

conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81.

Generally, in evaluating a complaint, materials outside the pleadings cannot be

considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th

Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the

pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of

Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

A court may also consider judicial orders. Porous Media Corp., 186 F.3d at 1079.

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. <u>See</u>, <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004). Section 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983.

### B.  Analysis

To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." <u>McDonald v. City of Saint Paul</u>, 679 F.3d 698, 704 (8th Cir. 2012) (quoting <u>Shrum ex rel Kelly v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was *directly* and *personally* involved in an alleged *constitutional violation*. <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985); <u>Clemmons v. Armontrout</u>, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").[8]

In addition to pleading individual involvement, a plaintiff must sufficiently plead a *violation of a specific constitutional right*.

### 1.  Official Capacity Monetary Damages Claims

As a threshold subject matter jurisdictional consideration, the Eleventh Amendment prohibits an action for monetary damages against a state unless it has unequivocally consented to

---

[8] Claims premised on a theory of vicarious liability do *not* state a claim for relief pursuant to 42 U.S.C. § 1983, <u>Beard v. Lockhart</u>, 716 F.2d 544, 545 (8th Cir. 1983), as the doctrine of *respondeat superior* does not apply in Section 1983 actions. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 659, 691 (1978).

suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996); Faibish v. University of Minnesota, 304 F.3d 797, 200 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity."). If claims are prohibited by Eleventh Amendment immunity, that immunity prohibition deprives the Court of subject matter jurisdiction, and under such circumstances, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate. See, Daniels v. Jesson, No. 13-cv-736, (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014); Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *7 (D. Minn. Jan 8, 2010).

The immunity afforded a state in federal court extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't of Health & Rehabilitative Sers. v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1982)). Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also, Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008) (citing Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004)). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan 8, 2010) (citing Baker, 501 F.3d at 925 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1999))). "It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precluded an award of money damages against a

state official acting in his or her official capacity. A plaintiff may maintain an action against a governmental official if the complaint seeks only injunctive or prospective relief." <u>Semler</u>, 2010 WL 145275, at *7 (citations omitted).

As employees of the MSOP, the Minnesota Department of Human Services, or the Department of Corrections, Defendants in the present case are state officials. <u>See</u>, <u>Id.</u>; <u>Daniels v. Jesson</u>, No. 13-cv-736, (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014). The Court, therefore, necessarily must construe Plaintiff's alleged Section 1983 official capacity claims against the Defendants as being alleged against the employing entity, i.e., the State of Minnesota.

Even liberally construing Plaintiff's Complaint and drawing all reasonable inferences in his favor, the present record before the Court is still devoid of any evidence or legal authority demonstrating either the state's consent to suit or Congressional abrogation of the state's sovereign immunity.

Therefore, the Court recommends that all of Plaintiff's Section 1983 claims so far as they seek monetary damages as alleged against the named Defendants sued in their official capacities be **DISMISSED with prejudice** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). <u>See</u>, <u>Semler</u>, 2010 WL 145275, at *7 ("[T]o the extent that Plaintiffs seeks monetary damages for actions taken by Defendants in their official capacities, these claims against Defendants are barred by the Eleventh Amendment[.]").

Dismissing Plaintiff's claims for monetary damages against the named Defendants in their official capacities leaves Plaintiff's official capacity claims for declaratory relief, as well as, his individual capacity claims for monetary damages and declaratory relief against the named Defendants for the Court's further consideration below.

16

### 2.   Defendants Roy, Ludeman, Jesson, Smith, Puffer, and Benson

Plaintiff alleges that Defendant Roy is the current Commissioner of the Minnesota Department of Corrections, and therefore, he is automatically substituted for former commissioner JoAnn Fabian; that Defendant Roy generally had oversight for the creation and implementation of certain Department of Corrections policies; and that Defendant Roy was generally aware that certain policies, rules, and regulations existed while doing nothing to change those policies. (Compl., [Docket No. 1], at ¶¶ 10a, 105, 132, 134–35, 147). Plaintiff also appears to allege that certain actions taken by unnamed employees of the Department of Corrections should be vicariously imputed upon Defendant Roy. (Id. at ¶¶ 23–24).[9]

 Plaintiff alleges that Defendant Ludeman and Defendant Jesson were previously Commissioners of the Minnesota Department of Human Services, previous members of a clinical team, and that Defendants Ludeman and Jesson were generally aware that certain policies and practices existed while doing nothing to change those policies. (Id. at ¶¶ 10k, 10l, 97–98, 134–35, 147, 161). Plaintiff also alleges that certain actions taken by Defendant Johnston—as a MSOP employee—are vicariously imputed onto Defendant Ludeman; that Defendant Ludeman was generally aware of the MCTA and Plaintiff's "liberty interest as a civilly [sic] committee;" and that Defendant Ludeman generally had oversight for the creation, as well as, implementation of certain policies and procedures. (Id. at ¶¶ 39, 77–78, 173, 175).

It is well settled, however, that a state official cannot be vicariously liable under Section 1983 for the acts of his or her subordinates under the doctrine of respondent superior, unless the state official was personally involved in, or participated in, the unconstitutional acts. See, Rizzo

---

[9] Plaintiff also draws certain legal conclusions about Defendant Roy such as concluding that Defendant Roy was prohibited from taking certain actions. (See, Id. at ¶ 113). The Court is not, however, required to accept such conclusory allegations as true when not supported by specific facts, and, in any event, such unsupported conclusory allegations are insufficient to state a plausible claim. Iqbal, 556 U.S. at 664.

v. Goode, 423 U.S. 362, 371 (1976); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007); Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Defendants are liable for their personal acts only; however, liability may follow if a supervisor "failed to properly train, supervise, direct or control the actions of a subordinate who causes the injury." Pearl v. Dobbs, 649 F.2d 608, 609 (8th Cir. 1981). A plaintiff must show an **affirmative link** between the misconduct and the adoption of any plan or policy by the defendant showing the authorization or approval of such alleged unconstitutional conduct. Clemmons, 477 F.3d at 967; see, Rizzo, 423 U.S. at 371; Ouztz v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).

Regarding Defendant Roy, Defendant Ludeman, and Defendant Jesson, Plaintiff makes only the most general and thread bare of allegations. Plaintiff fails to state in any way how Defendants Roy, Ludeman, or Jesson were personally involved in or directly participated in any of the alleged unconstitutional acts plead in Plaintiff's Complaint. (See, Compl. [Docket No. 1]). Notably, Plaintiff has not even generally alleged that Defendants Roy, Ludeman, or Jesson failed to train, supervise, direct, or control the actions of any subordinate who allegedly caused injury.

Likewise, Plaintiff's mere general allegations regarding Defendants Smith, Puffer, and Benson also fail to demonstrate any personal involvement or direct participation in the alleged constitutional violations. Plaintiff simply alleges that Defendants Smith, Puffer, and Benson were aware that Plaintiff's Department of Corrections file contained copies of his civil commitment order, however, Plaintiff does not plead in any way how that mere knowledge alone is causally connected to any alleged constitutional violation. (Id. at ¶ 102).[10] Plaintiff only generally alleges that Defendants Smith and Benson were also aware of certain policies and procedures while doing nothing to change those polices or procedures, and that Plaintiff wrote to Defendant

---

[10] Plaintiff alleges that Defendant Stacken said she would discuss Plaintiff's request for mental health care with Defendants Smith and Puffer, however, Plaintiff fails to plead that the so-called promised discussion ever took place between either Defendant Smith or Puffer and Defendant Stacken. (Id. at ¶ 101).

Benson who never responded.[11] (Id. at ¶¶ 92–93, 97–98, 132).[12] Plaintiff does not allege any specific facts that Defendants Smith, Puffer, or Benson were personally involved in or directly participated in any of the actions on which Plaintiff bases his claims.

Therefore, Plaintiff has failed to plausible plead or state a claim upon which relief may be granted regarding Defendants Roy, Ludeman, Jesson, Smith, Puffer, and Benson. See, Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007).

Accordingly, the Court recommends that all of Plaintiff's official and individual capacity claims against Defendants Roy, Ludeman, Jesson, Smith, Puffer, and Benson be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

### 3. Defendant Thielan

Plaintiff alleges that Defendant "Thielan is the Hearing and Release Unit Officer of the Department of Corrections." (Compl., [Docket No. 1], at ¶ 11b). Plaintiff also alleges that Defendant Thielan conducted a disciplinary hearing in which she heard testimony and arguments; found Plaintiff's argument unpersuasive; and found Plaintiff in violation of the terms of his intensive supervised release because Plaintiff had refused to participate in treatment at the MSOP after being there for almost two years. (Id. at ¶¶ 68, 69, 71, 74). Based on that finding, Plaintiff was revoked from the MSOP back to the custody of the Department of Corrections. (Id. at ¶ 74–75). All of the factual assertions regarding Defendant Thielan surround only her role as

---

[11] However, Plaintiff again fails to even allege that Defendant Benson was aware of the correspondence.

[12] Plaintiff also draws certain legal conclusions regarding Defendants Smith and Puffer such as concluding that Defendants Smith and Puffer were prohibited from taking certain actions. (See, Id. at ¶ 113). The Court is not, however, required to accept such conclusory allegations as true when not supported by specific facts, and, in any event, such unsupported conclusory allegations are insufficient to state a plausible claim. Iqbal, 556 U.S. at 664.

the Department of Corrections' disciplinary hearing presiding officer, Plaintiff makes no other

factual assertions regarding Defendant Thielan.

It is well established that judges are protected by absolute immunity for their judicial

actions. Pierson v. Ray, 386 U.S. 547, 553–554 (1967) ("Few doctrines were more solidly

established at common law than the immunity of judges from liability for damages for acts

committed within their judicial jurisdiction."). The Supreme Court has extended that immunity to

other government officials who perform quasi-judicial functions for acts performed within the

scope of their quasi-judicial duties. Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) ("With this

judicial immunity firmly established, the Court has extended absolute immunity to certain others

who perform functions closely associated with the judicial process.")

The Supreme Court has said that whether an individual has quasi-judicial absolute

immunity is not determined by the individual's rank, title, or "location within the Government,"

but by the nature of the individual official's responsibilities. Cleavinger, 474 U.S. at 201–02

(citing Butz v. Economou, 438 U.S. 478, 510 (1978)). Courts look to a number of factors to

determine whether an individual government official is entitled to quasi-judicial absolute

immunity, namely:

> (a) the need to assure that the individual can perform his functions without
> harassment or intimidation; (b) the presence of safeguards that reduce the need for
> private damages actions as a means of controlling unconstitutional conduct; (c)
> insulation from political influence; (d) the importance of precedent; (e) the
> adversary nature of the process; and (f) the correctability of error on appeal.

Id. at 202 (citing Butz, 438 U.S. at 512).

Weighing evidence, making factual determinations, determining sanctions, and issuing

written decisions are duties that are comparable in function to the duties of a judge. See, Dunham

v. Wadley, 195 F.3d 1007, 1011 (8th Cir. 1999) (affording absolute quasi-judicial immunity to

20

veterinary examining board); see also, Dixon v. Clem, 492 F.3d 665, 674 (6th Cir. 2007)

(providing that actions as a hearing officer of state administrative tribunal were clearly taken in a

judicial capacity). Indeed, the Eighth Circuit has held that a parole official, in deciding whether

to grant, deny, or revoke parole, performs duties that are similar to a judge's duties and, as such,

are entitled to quasi-judicial absolute immunity for those actions. See, Anton v. Getty, 78 F.3d

393, 396 (8th Cir. 1996).

Considering the precise issue now before the Court, i.e. whether Defendant Thielan as a

hearing officer presiding over a revocation hearing is entitled to quasi-judicial immunity, this

Court has previously noted that:

> A Minnesota Department of Corrections hearing officer presiding over a
> revocation hearing is required to take testimony, consider and weigh evidence,
> make factual findings, determine appropriate sanctions, including whether to
> revoke the alleged offender's supervised release, and issue oral decisions that are
> subject to appeal. Those duties are closely analogous to the duties of the parole
> officer that the Eighth Circuit concluded was entitled to quasi-judicial absolute
> immunity. Accordingly, the Court concludes that Defendant Schadegg, as a DOC
> hearing officer is entitled to quasi-judicial absolute immunity for her actions
> within the scope of her duties as a hearing officer.

Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2016 WL 675708, at *17 (D. Minn. Jan. 29, 2016)

(internal citations omitted), report and recommendation adopted, 2016 WL 659710 (D. Minn.

Feb. 18, 2016), aff'd, 670 F. App'x 434 (8th Cir. 2016). Other Courts in this District have

reached similar conclusions. See, Bandy v. Comm'r of Correction, No. 13-cv-2209 (JRT/LIB),

2016 WL 1271469, at 4–6 (D. Minn. Mar. 31, 2016) (Chief Judge John R. Tunheim) (concluding

that a hearing officer in the hearing and release unit department within the Department of

Corrections was entitled to quasi-judicial immunity), aff'd No. 16-2182, 2017 WL 1423392 (8th

Cir. Apr. 21, 2017). Therefore, the Court concludes that Defendant Thielan, as a Department of

Corrections hearing officers, is entitled to quasi-judicial immunity for her actions within the

scope of her duties, and this necessarily includes all of Plaintiff's factual allegations regarding Defendant Thielan.

Accordingly, the Court recommends that <u>all</u> of Plaintiff's official capacity and individual capacity claims against Defendant Thielan be **DISMISSED with prejudice** as quasi-judicial immunity protects her from suit in the present case, and thus, pursuant to Rule 12(b)(6), the Plaintiff has failed to state a claim upon which relief could be granted.

### 4.  Counts I, II, V, and VI

Counts I, II, V, and VI of Plaintiff's Complaint each purport to raise claims that Plaintiff's due process rights were violated. (<u>See</u>, Compl., [Docket No. 1], at ¶¶ 4a, 136–63, 4c, 192–203, 4d, 204–20). At Count I and II, Plaintiff—in his federal rights claim—appears to allege that his due process rights were violated when he was denied sex offender treatment, as well as, denied the right to refuse sex offender treatment. (<u>See</u>, <u>Id.</u> at ¶¶ 4a, 136–63). In Count V, Plaintiff alleges that his right to due process was violated when he was not transferred to the MSOP for sex offender treatment when a Department of Corrections policy allegedly permitted his transfer. (<u>See</u>, <u>Id.</u> at ¶¶ 4c, 192–203). At Count VI, Plaintiff alleges that a policy enacted after his dual commitment to the MSOP and the Department of Corrections affected his right to sex offender treatment: specifically in regard to the extra time he had to wait before he could again potentially receive sex offender treatment at the MSOP. (<u>See</u>, <u>Id.</u> at ¶¶ 4d, 204–20). The alleged violations of due process rights in Counts I, II, V, and VI are each premised on Plaintiff's alleged right to receive sex offender treatment.

"A due process claim is cognizable only if [in the first instance] there is a recognized liberty or property interest at stake." <u>Ragan v. Lynch</u>, 113 F.3d 875, 876 (8th Cir. 1997); <u>see</u>, <u>Schmidt v. Des Moines Public Schs.</u>, 655 F.3d 811 (8th Cir. 2011). "We need reach the question

of what process is due only if the inmates establish a constitutionally protected liberty interest;" where no constitutionally protected liberty interest is identified, a due process claim necessarily fails. See, Beaulieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). A prisoner also cannot sustain a due process claim unless he can first show that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Eighth Circuit Court of Appeals has interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

Plaintiff fails to state any actionable due process claims because he has pled no factual allegations suggesting that he had been subjected to the type of significant hardship that Sandin requires. As noted above, Plaintiff generally alleges that he has a right to sex offender treatment as a protected liberty interest. To determine whether an inmate possess a liberty interest, courts look to the nature of the claimed interest to determine whether the Due Process Clause applies. See, Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570–71 (1972). Plaintiff, as an inmate on intensive supervised release, did not have a protected liberty interest in obtaining sex offender treatment. See, Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (providing that a prisoner's interest in participating in "rehabilitative programs" is not "sufficient to invoke due process"). While Plaintiff may have benefited from sex offender treatment during his incarceration with the Department of Corrections, the ineligibility to participate in such treatment

while dually committed at the Department of Corrections and before he returned to the MSOP is not the type of "atypical and significant hardship" contemplated by Sandin.

"Federal courts have repeatedly recognized that unwanted prison transfers, segregated confinement, lost privileges, and lost opportunities for work, education and rehabilitation, are *normal and expectable experiences of prison* life, and they are not of 'atypical and significant hardship' that implicate constitutionally protected liberty interest." Olhausen v. Fabian, No. 7-cv-4593 (MJD/JSM), 2008 WL 2042613, at *5 (D. Minn. May 12, 2008) (compiling cases) (emphasis in original). Congress has given federal prison official full discretion to control prisoner classification and eligibly for rehabilitative programs in the federal system. Id. Where Congress has given a federal prison official such discretion to control matters of rehabilitative programming "a federal prisoner can have no legitimate statutory or constitutional entitlement sufficient to invoke due process." Stiger v. Haynes, No. 2:13-cv-25 (SWW/JJV), 2013 WL 3965424, at *3 (E.D. Ark July 31, 2013) (citing Moody, 429 U.S. at 88 n. 9); see, Moore v. Comm'r of Corr., No. 9-cv-2060 (JRT/FLN), 2010 WL 4116612, at *5 (D. Minn. June 7, 2010) (providing that eligibility for rehabilitative programs does "not give rise to due process protections"); see also, Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *7 n. 3 (D. Minn. Mar. 10, 2016) (noting that the eligibility for rehabilitative programming does not give rise to a protected liberty interest) report and recommendation adopted, 2016 WL 1610603 (D. Minn. Apr. 21, 2016). The Court can envision no rational basis as to why the conclusion should be any different for due process claims arising in state prison. See, Olhausen v. Fabian, No. 7-cv-4593 (MJD/JSM), 2008 WL 2042613, at *5 (D. Minn. May 12, 2008) (noting that a due process claim is cognizable only if there is a recognized liberty or property interest at stake in a Section 1983 cause of action brought by a prisoner at the Minnesota

Correctional Facility at Rush City, Minnesota); see also, Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668–69 (8th Cir. 1996) (providing—in action brought pursuant to Section 1983 by a Iowa state prisoner—that the prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory).

Even reading the Complaint as a whole; construing it liberally, taking all the facts pled within as true; and drawing all reasonable inference in Plaintiff's favor, Plaintiff has failed to identify any protected liberty interest. Without an identifiable and protected liberty interest sufficiently plead in the Complaint, all of Plaintiff's due process claims necessarily fail. Ragan, 113 F.3d at 876; see, Schmidt, 655 F.3d at 817–18; Sandin, 515 U.S. at 484.

Accordingly, the Court recommends **DISMISSING without prejudice** all of Counts I, II, V, and VI which set forth Plaintiff's due process claims for monetary damages against the remaining named Defendants in their individual capacities, as well as, his due process claims for declaratory relief against the remaining named Defendants in their individual and official capacities. Pursuant to Rule 12(b)(6), the Plaintiff has failed to state a claim upon which relief can be granted.

### 5. Count III

In Count III, Plaintiff alleges that his assertion of his Fifth Amendment right as a basis not to initially participate in MSOP sex offender treatment resulted in the revocation of his intensive supervised release and his return to Department of Correction custody in violation of his federal rights under the Fifth Amendment to the United States Constitution. (Compl., [Docket No. 1], at ¶¶ 4b, 164–80). Essentially, Plaintiff argues that his Fifth Amendment right against self-incrimination was violated when he was denied MSOP treatment because he refused to

incriminate himself before entering treatment, and that inability to receive MSOP treatment is what consequently led to the revocation of his intensive supervised release and his return to prison. (See, Id.).

Plaintiff has previously litigated his claim that "treatment was not available to him because, in order to enter the treatment program, he [was] required to incriminate himself." See, Stevens v. Ludeman, No. A7-1195, 2008 WL 2574475, at *2 (Minn. Ct. App. July 1, 2008).[13] In June 2006, Plaintiff, then represented by counsel, filed a state Writ of Habeas Corpus in Nicollet County District Court raising this exact argument. See, Id. In his petition and on appeal of that petition, Plaintiff relied on Johnson v. Fabian, 735 N.W.2d 295 (Minn. 2007), for the purported argument that the Minnesota Department of Corrections cannot constitutionally extend an inmate's incarceration for failure to participate in sex offender treatment that is not available unless the inmate waives his Fifth Amendment privilege against self-incrimination. Stevens v. Ludeman, No. A7-1195, 2008 WL 2574475, at *2 (Minn. Ct. App. July 1, 2008). In reviewing the denial of Plaintiff's petition for a state writ of habeas corpus, the Minnesota Court of Appeals concluded that Plaintiff was "not compelled to incriminate himself at [the] MSOP," and therefore, "the Fifth Amendment privilege against self-incrimination [did] not apply to [Plaintiff's] commitment." Id. at 3. The Court reasoned that the MSOP program permitted discussion of offenses without requiring a patient to incriminate himself, without being required to provide specific information that could incriminate him, and Plaintiff had "not demonstrated that he must necessarily incriminate himself to participate in treatment or that he had suffered any consequences related to a failure to self-incriminate." Id. at *2–3.

---

[13] The Court may consider this prior state court order as the court may consider public record judicial orders which do not conflict with the complaint. Porous Media Corp., 186 F.3d at 1079.

In the present action, Plaintiff again alleges that the assertion of his Fifth Amendment privilege barred him from MSOP treatment which in turn resulted in his revocation of intensive supervised release, and Plaintiff takes issue now with the exact finding the Minnesota Court of Appeals made (that Plaintiff was not compelled to incriminate himself) is untrue. (See, Id. at ¶¶ 4b, 164–80). In fact, Plaintiff in his Complaint relies on the same case, argument, and facts he raised in his previously unsuccessful state writ of habeas corpus petition and in the appeal of that petition. (See, Id.). As such, Plaintiff's Fifth Amendment claim in the present case is barred by the Rooker-Feldman doctrine.

"The 'basic theory' of the Rooker-Feldman doctrine is 'that only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009) (citations omitted). Courts apply the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violated the loser's federal rights." Johnston v. DeGrandy, 512 U.S. 997, 1005–1006 (1994) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). The Eighth Circuit Court of Appeals has noted that the Rooker-Feldman doctrine "extends not only to 'straightforward appeals [of state court decisions] but also [to] more indirect attempts by

27

federal plaintiffs to undermine state court decisions.'" <u>Ballinger v. Culotta</u>, 322 F.3d 546, 547–48 (8th Cir. 2003) (quoting <u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492 (8th Cir. 2000)).

"A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" <u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492 (8th Cir. 2000) (citing <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 25 (1987)); <u>see</u>, <u>Canal Capital Corp. v. Valley Pride Pack, Inc.</u>, 169 F.3d 508, 512 (8th Cir. 1999). Further, and directly to the matter now before this Court, '[o]nce a party has litigated in state court . . . he cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [section] 1983 action." <u>Prince v. Arkansas Bd. of Exam'rs in Psychology</u>, 380 F.3d 337, 341(8th Cir. 2004).

In the present case, Plaintiff presents precisely the same facts and legal authority he presented to the state court, he presents here the same arguments he presented to the state court, and he seeks the same resolution here that he sought unsuccessfully in state court: a judicial finding that his Fifth Amendment rights were violated.

Plaintiff's success on this Section 1983 claim now in this Court depends necessarily on the Court reviewing and invalidating the previous Minnesota Court of Appeals' Order. This Court cannot granted Plaintiff's presently requested relief without invalidating the state court's conclusion that Plaintiff was in fact not compelled to incriminate himself before participating in MSOP treatment so he was not required to violate his Fifth Amendment privilege against self-incrimination in order to participate in MSOP treatment.

Accordingly, the Court recommends **DISMISSING with prejudice** all of Count III which sets forth Plaintiff's Fifth Amendment claims for monetary damages against the remaining named Defendants in their individual capacities, as well as, Plaintiff's Fifth Amendment claims

for declaratory relief against the remaining named Defendants in their individual and official capacities.

### 6.  Count IV

In Count IV, Plaintiff alleges that Defendants failed to provide Plaintiff with mental health treatment while in the custody of the Department of Corrections and that this constituted deliberate indifference to his serious psychological needs constituting cruel and unusual punishment which violated Plaintiff's federal rights under the Eighth Amendment. (Compl., [Docket No. 1], at ¶¶ 4c, 181–95).

Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment and, therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (quotations and citations omitted); see also, Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs.") (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

However, to plead the "deliberate indifference" necessary to sufficiently set forth an Eighth Amendment violation, a plaintiff must demonstrate (1) that he had an objectively sever medical need, and (2) that prison officials knew, of but deliberately disregarded, that need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). In alleging deliberate indifference, Plaintiff must demonstrate "more than negligence, more even than gross negligence  . . . ." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). "Deliberate indifference is akin to criminal recklessness[.]" Drake ex rel. Cotton v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006).

"Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." Baez v. Rosemack, No. 9-cv-2121 (RHK/LIB), 2011 WL 4062586, at *4 (D. Minn. Aug. 9, 2011) (citing Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997)). "The failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Id. "The Eighth Amendment, while requiring medical treatment, does not require that the precise treatment requested be provided, nor does it require treatment at the time of the patient's choosing. Rather, it merely requires an absence of deliberate disregard." Senty-Haugen, 2005 WL 2917464, at *7 (citing Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994); Long, 86 F.3d at 765); see also Logan v. Clark, 119 F.3d 647, 650 (8th Cir. 1997) (holding that the fact that prison officials undertook some effort to remedy plaintiff's pain, "while perhaps not as extensive as those a private health-care provider might have taken, did not reflect deliberate indifference to [plaintiff's] medical needs").

Upon review by the Court, the factual allegations in Plaintiff's Complaint are insufficient to implicate actions "akin to criminal negligence." To survive a 12(b)(6) analysis Plaintiff's Complaint must demonstrate that Defendants actually knew of some serious medical need Plaintiff suffered which caused him a substantial risk of serious harm, and Defendants then deliberately disregarded that need. See, Jolly, 205 F.3d at 1096; Baez, 2011 WL 4062586, at *4.

Even viewing the allegations of the Complaint in the light most favorable to Plaintiff, his claims fail to specifically demonstrate either Defendants' actual knowledge of any serious medical need causing a substantial risk of harm or their subsequent deliberate disregard thereof.

Plaintiff fails to demonstrate that Defendants had actual knowledge of a serious medical need causing a substantial risk of harm. In fact, Plaintiff fails to allege that he suffered any actual physical harm due to any purported lack of treatment. (See, Compl. [Docket No. 1]). Moreover, Plaintiff specifically alleges in his Complaint that his admission mental health screening, which Plaintiff requested on April 8, 2008, found "no clinical significant psychological disorders requiring mental health treatment while at Rush City." (Id. at ¶ 87). While Plaintiff alleges that later on May 31, 2012, he was diagnosed with "serious mental disorders" and treatment was recommended, he does not allege that any time after May 31, 2012, he asked for or was deliberately denied treatment. Accordingly, Plaintiff has failed to demonstrate that Defendants had any actual knowledge of a serious medical need causing a substantial risk of harm, or that any such need even existed.

As Plaintiff has failed to plausibly plead that Defendants had any actual knowledge of a serious medical need causing a substantial risk of harm, Plaintiff has also effectively failed to show a subsequent deliberate disregard of any serious medical need. In fact, Plaintiff acknowledges that the Department of Corrections—initially at the start of his intensive supervised release—sent him to the MSOP for sex offender treatment but in which Plaintiff refused to participate. (Id. at ¶¶ 24, 43, 48, 61–65). Moreover, Plaintiff specially alleges that on January 22, 2011, Defendant Allen informed him that Plaintiff could contact Defendant Stacken for general mental health care, and it would be provided to him to treat any mental illness. (Id. at ¶ 110). Plaintiff, however, does not allege that he ever requested any mental health treatment

31

other than his preferred transfer back to the MSOP. This delay in treatment does not constitute a deliberate disregard as Plaintiff is not entitled to treatment at the place or time of his choosing. Senty-Haugen, 2005 WL 2917464, at *7 (citing Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994); Long, 86 F.3d at 765).

Further, when Plaintiff wrote to Defendant Lundquist asking to be returned to the MSOP, Defendant Lundquist received the request and Plaintiff specifically pleads that he respond by writing that he was "unaware of any clinical or other unique factors in [Plaintiff's] case necessitation a transfer to [MSOP] a DHS [f]acility." (Id. at 96). While Plaintiff may disagree with this assessment, mere disagreement does not constitute a deliberate disregard as a prisoner has no right to the precise treatment of his choosing. See Jolly, 205 F.3d at 1096; Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) (stating that prisoners "do not have a constitutional right to any particular type of treatment"); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988); Senty-Haugen, 2005 WL 2917464, at *7 (citing Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994)).

Accordingly, the Court recommends **DISMISSING without prejudice** all of Count IV which sets forth Plaintiff's Eighth Amendment claims for monetary damages against the remaining named Defendants in their individual capacities, as well as, Plaintiff's Eighth Amendment claims for declaratory relief against the remaining named Defendants in their individual and official capacities. Pursuant to Rule 12(b)(6), the Plaintiff has failed to state a claim upon which relief can be granted.

### 7.  Count VII

In Count VII, Plaintiff alleges that Defendants conspired to deprive Plaintiff of his federal right to equal protection under the law in violation of the Equal Protection Clause of the United States Constitution. (Id. at ¶¶ 4e, 221–29). Plaintiff only generally alleges that while he was

initially on intensive supervised release to the MSOP, Defendants treated him differently than "a class of civilly committed sex offenders" which allegedly deprived Plaintiff of the equal protection of the law. (See, Id.).

"The Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not run afoul of the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly." Am. Family Ins. v. City of Minneapolis, 836 F.3d 918, 921 (8th Cir. 2016). "[P]laintiff must show that he was similarly situated 'in all relevant respects.'" Caswell v. City of Bloomington, 430 F. Supp. 2d 907, 913 (D. Minn. April 28, 2006). Therefore, in order to adequately plead his equal protection claim and survive a Rule 12(b)(6) motion, Plaintiff needed to plead that Defendants treated him differently than similarly situated persons. See, Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998).

Plaintiff only generally pleads that "Defendants refusal to treat [him] similarly to a class of civilly committed sex offenders deprive[d] [him] of equal protection of the laws" and that he "was treated differently without [a] rational basis as compared to other patients in Minnesota and indeed those held in other state facilities deemed to be sex offenders with mental illness." (Compl., [Docket No. 1], at ¶ 225). With this mere conclusory allegation, Plaintiff fails to demonstrate how he was "similarly situated 'in all relevant aspects,'" and in any event, he likewise fails to demonstrate how he was treated differently. See, Caswell, 430 F. Supp. 2d at 913; Johnson, 152 F.3d at 862. As stated in Twombly, 550 U.S. at 555, factual allegations in the Complaint must consist of "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Plaintiff fails in the present case to provide anything more than labels, conclusions, and formulaic recitations of the elements of an Equal Protection

claim. Therefore, pursuant to Rule 12(b)(6), Plaintiff has failed to allege an Equal Protection claim upon which relief may be granted.

To the extent Plaintiff also alleges that Defendants conspired against him in violation of 42 U.S.C. § 1985, Plaintiff fails to allege sufficient facts supporting such a claim. To state a civil rights conspiracy claim under § 1985, Plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving another of the equal protection of the laws, or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." Housman v. Jesson, No. 15-cv-2209 (PAM/HB), 2016 WL 7231600, at *5 (D. Minn. Dec. 14, 2016) (citing Federer v. Gephardt, 363 F.3d 754, 757–85 (8th Cir. 2004)).

As discussed above, Plaintiff has failed to allege sufficient facts to support the element of an Equal Protection claim requiring him to show injury to his equal protection rights. Plaintiff has also failed to allege any specific facts supporting the element of conspiracy or agreement to deprive Plaintiff of federally protected rights essential to any conspiracy claim in any way beyond pure conclusory assertions.

Accordingly, the Court recommends **DISMISSING without prejudice** all of Count VII which sets forth Plaintiff's Equal Protection and conspiracy claim for monetary damages against the remaining named Defendants in their individual capacities, as well as, those claims for declaratory relief against the remaining named Defendants in their individual and official capacities. Pursuant to Rule 12(b)(6), the Plaintiff has failed to state a claim upon which relief can be granted.

### 8. Count VIII

In Count VIII, Plaintiff alleges that he was unlawfully imprisoned within the Department of Corrections for an intensive supervised release violation from November 3, 2006, until November 21, 2014, when Defendants "failed to notify the sentencing court and the prosecutor in the jurisdiction where plaintiff was sentence that he did not violate section 609.345 mandated by the conditional release statute" which violated his federal rights under the Due Process Clause of the Fourteenth Amendment. (Id. at ¶¶ 4f, 230–45). Plaintiff appears to be arguing that imposition of his original ten year term of conditional release was unlawful, and Defendants enforcement of the allegedly unlawful terms of conditional release constituted a continued unlawful imprisonment. (See, Id.). It is also reasonable to infer that Plaintiff argues that Defendant Thielan's revocation of Plaintiff's intensive supervised release and thereby returning Plaintiff to disciplinary confinement within the Department of Corrections constituted unlawful imprisonment. (See, Id.).

To the extent Plaintiff argues that the revocation of his conditional release at his revocation hearing due to his refusing to initially participate in MSOP sex offender treatment constitutes unconstitutional reimprisonment, the only Defendant whom Plaintiff alleges was involved in that proceeding was Defendant Thielan who as already discussed above is entitled to quasi-judicial immunity, and that claim necessarily fails as Defendant Thielan is protected from suit by quasi-judicial immunity.

To the extent Plaintiff argues that his original ten year period of conditional release was unconstitutional, and by extension any imposition of that conditional release constituted

unconstitutional imprisonment, that argument too fails as a matter of law as the claim is, as discussed below, barred by the Heck doctrine.[14]

In Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), the United States Supreme Court held that a § 1983 plaintiff may not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless that plaintiff first "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." The United States Supreme Court further stated:

> "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."

Id. at 487.

The Court reiterated that a prisoner cannot challenge the fact or duration of his incarceration in a civil rights action. Id. Habeas corpus is the exclusive federal remedy for a prisoner who is challenging the validity of his conviction or the length of his sentence. Id. at 481 (citing Preiser v. Rodriguez, 411 U.S. 475, 488–90 (1973)). Thus, a prisoner-plaintiff cannot prosecute a civil rights claim that would effectively "call into question the lawfulness of [his] conviction or confinement" regardless of whether he seeks declaratory or monetary relief. Heck, 512 U.S. at 483; Edwards v. Balisok, 520 U.S. 641 (1997); Sheldon v. Hundley, 83 F.3d 231,

---

[14] Plaintiff's claim that the revocation of this conditional release constituted unlawful imprisonment is also barred by the Heck doctrine, discussed below, as Plaintiff has failed to make any factual assertion that he has met the favorable termination requirement of Heck regarding his revocation from the MSOP back to the DOC. See, Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at *6 (D. Minn. Sept. 30, 2014) ("The Heck favorable-termination requirement applies to [plaintiff's] challenge to his parole revocation and imprisonment" and he has failed to meet "the favorable-termination requirement regarding his parole revocation.") (citing Marlowe v. Fabian, 676 F.3d 743, 745–47 (8th Cir. 2012)).

233 (8th Cir. 1996) ("*Heck* requires favorable termination of the action in an authorized state tribunal or federal habeas corpus court, even if the claim is for damages rather than earlier release"). "A plaintiff must satisfy this favorable-termination requirement even if he is no longer incarcerated and, as a result, cannot obtain habeas relief." <u>Favors v. Hoover</u>, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at *6 (D. Minn. Sept. 30, 2014) (citing <u>Entzi v. Redmann</u>, 485 F.3d 998, 1003 (8th Cir. 2007)).

In the present case, Plaintiff pled guilty pursuant to an Alford plea and was convicted of criminal charges in a Minnesota state court which resulted in a sentence that included a ten year term of conditional supervised release. (Compl., [Docket No. 1], at ¶ 19). Plaintiff has not made any factual assertion in his Complaint that his conviction and sentence have been reversed or were otherwise invalidated. Plaintiff seeks Section 1983 relief in this Court which would necessarily require it to find his conviction and sentence in Minnesota state court invalid; Plaintiff asks for declaratory judgment that the portion of his sentence imposing a ten year term of conditional release was unconstitutional which caused Defendants to violate his constitutional rights by enforcing that term of conditional release, and he also seeks monetary damages stemming therefrom. For all of these reasons, Plaintiff's claim in Count VIII is barred by the <u>Heck</u> doctrine.

Accordingly, the Court recommends **DISMISSING without prejudice**[15] Count VIII which sets forth Plaintiff's unlawful imprisonment claim for monetary damages against the remaining named Defendants in their individual capacities, as well as, his unlawful

---

[15] The Court recommends dismissal without prejudice so that Plaintiff may later refile the claims if his conviction and sentence are later invalidated. <u>See</u>, <u>Schafer v. Moore</u>, 46 F.3d 43, 45 (8th Cir. 1995) (modifying dismissal of <u>Heck</u>-barred claim to be without prejudice so that the plaintiff "can refile his complaint should he succeed in challenging the legality of his continued confinement through appropriate state or federal remedies").

imprisonment claim for declaratory relief against the remaining named Defendants in their individual and official capacities.

### 9.  Plaintiff's Various State Law Claims

Although Plaintiff invokes § 1983, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." Alexander v. Hedback, 718 F.3d 762, 765 (8th Cir. 2013) (citing Lind v. Midland Funding, LLC, 688 F.3d 402, 405 (8th Cir. 2012)). Section 1983 does not itself grant jurisdiction; it is a vehicle for claims of federal statutory and federal constitutional violations, not a cause of action in and of itself. See, Hagans v. Lavine, 415 U.S. 528, 534 (1974). "[A]s noted by the Eighth Circuit, 'a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983.'" Rollins v. City of Albert Lea, 79 F. Supp. 3d 946, 960 (D. Minn. 2014) (quoting Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993)). Therefore, Plaintiff's attempts to bring claims of violation of the Minnesota Constitution or the Minnesota Civil Commitment and Treatment Act (MCTA) as part of this § 1983 action must also necessarily fail.

In addition, since this Court recommends the dismissal of all of Plaintiff's federal statutory and federal constitutional claims alleged under 42 U.S.C. § 1983, this Court could and does alternatively recommend declining to exercise pendent jurisdiction over Plaintiff's Minnesota constitutional claims, as well as, Plaintiff's purported claims under the MCTA.[16] See,

---

[16] Such claims would be futile in any event because Minnesota provides no private causes of action based on violations of the Minnesota Constitution. See, Richards v. Dayton, No. 13-cv-3029 (JRT/JSM), 2015 WL 1522199, *34-35 (D. Minn. Jan. 30, 2015) (finding Plaintiff "failed to state a claim alleging a violation of the Minnesota Constitution because Minnesota courts have not recognized a private right of action to address violations of the Minnesota Constitution"), report and recommendation adopted by 2015 WL 1522237, *5–6; Jihad v. Fabian, No. 09-cv-1604 (SRN/LIB), 2011 WL 1641885, *8 (D. Minn. Feb. 17, 2011) (dismissing claim under Article 1, § 16 of the Minnesota Constitution because "Minnesota has not enacted a statute that is equivalent to Section 1983, which provides a private cause of action for violations of the Federal Constitution"), report and recommendation adopted by 2011 WL 1641767, *3 (D. Minn. May 2, 2011); Riehm v. Engelking, No. 6-cv-293 (JRT/RLE), 2007 WL 37799,

Barstad v. Murray Cty., 420 F.3d 880, 888 (2005) (stating that when all federal law claims are eliminated prior to trial, the balance of the factors relevant to an exercise of pendent jurisdiction generally point toward declining to exercise jurisdiction over any remaining state law claims).

Accordingly, this Court recommends **dismissing without prejudice** all of Plaintiff's state law claims which are based on alleged violations of the Minnesota Constitution or the MCTA.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED** in its entirety, as set forth above.

Dated: June 8, 2017                                 s/Leo I. Brisbois
                                                    The Honorable Leo I. Brisbois
                                                    United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

---

*8 (D. Minn. Jan. 4, 2007) (dismissing claims under Minnesota Constitution because "[u]nlike 42 U.S.C. § 1983, Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota constitution").